# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class MATTHEW T. GINN
## United States Air Force

## ACM 38551

## 17 August 2015

Sentence adjudged 28 September 2013 by GCM convened at Laughlin Air Force Base, Texas. Military Judge: Donald R. Eller, Jr.

Approved Sentence: Dishonorable discharge, confinement for 6 months, total forfeiture of pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Judge:

The appellant was convicted by a panel of officer members, contrary to his plea, of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920. He was also convicted, in accordance with his plea, of dereliction of duty by providing alcohol to a minor in violation of Article 92, UCMJ, 10 U.S.C. § 892.[1] The court sentenced him to a dishonorable discharge, 6 months confinement, total forfeitures, and reduction to E-1. The sentence was approved as adjudged.

---

[1] The appellant was found not guilty of one specification alleging assault.

The appellant argues that: (1) the military judge erred by not instructing the members on the definition of the term "impairment"; (2) the military judge erred by not providing the members, in response to their specific request, a definition of the term "competent"; (3) Article 120, UCMJ, is unconstitutionally vague on its face and as applied to him; (4) the evidence was legally and factually insufficient to sustain the conviction under Article 120, UCMJ; (5) the victim impact statement provided to the convening authority contained impermissible matters; and (6) he is entitled to relief for unreasonable delay between the close of trial and the convening authority's action. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

The charges in this case arose after the appellant, the victim, and a third Airman agreed to meet after work to have drinks in the appellant's dormitory suite. While the testimony about events that night is in some respects contradictory and incomplete, we find the following facts under our authority pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

The victim, an air traffic control apprentice who had only recently arrived at the base, worked in the same unit and on the same shift as the appellant. Although they had gone out together on a few occasions, usually with other Airmen, they were not in a dating relationship. At the time of this incident, the victim was 19 years old.

On Friday, 17 August 2012, the appellant, a friend, and the victim met up after work, intending to get some liquor and drink it together. The victim, who expressed her preference for a particular type of tequila, agreed to pay, but the appellant actually bought the liquor because she was underage. The victim paid him back shortly thereafter from cash she received after purchasing limes to accompany the shots of tequila. Although the evidence varied substantially regarding how much tequila the victim drank, we find that she had eight to ten shots in less than two hours. Not surprisingly, the victim vomited sometime within an hour after drinking the last shot.

The victim does not recall much of the night after she drank the tequila. She has an indistinct memory of being in the bathtub of the appellant's bathroom with a white male who looked like the appellant leaning over her. Her only other memory of the night was a brief recollection of lying on the couch in the living room of the appellant's dormitory suite and noticing that she was wearing different clothes than she had on earlier in the evening. She later woke up on that couch and found that the appellant and his friend were asleep on the couch as well. All three were fully clothed. The victim went back to her own dormitory room and noticed the sun was just coming up. She noticed pain in her vagina as if she had uncomfortable sex as well as bruises on her arm and knee. While changing clothes, she also discovered ten to fifteen quarter-sized bruises on her chest that she described as hickeys.

ACM 38551

The appellant's friend, whose memory of the night was more complete, testified the victim became largely unresponsive after drinking the tequila, first vomiting on the bathroom floor, and later passing out in the appellant's bedroom. He first observed the victim stumble after drinking multiple shots of tequila. The friend then went outside to talk to another individual who was nearby. About 35 to 40 minutes later, he returned and the appellant told him the victim had vomited. The friend saw vomit on the bathroom floor, up the walls, and in the doorway.[2] As he was walking in, the appellant was walking out, complaining about the mess. The friend found the victim in the bathtub, wearing a different shirt than she had been wearing earlier. The shirt had vomit on it and the water was running at her feet.

The friend, in an effort to calm the appellant, took charge of cleaning up the mess. He tried talking to the victim, but she was incoherent and had difficulty verbalizing complete thoughts. She would alternately open and close her eyes, lapsing in and out of awareness. Her clothes were wet from the water in the bathtub, so after cleaning the vomit, the friend tried to change her into some shorts and a t-shirt provided by the appellant. He had to lift her from the bathtub and guide her as she stumbled into the bedroom and onto the bed. Although she was unable to remain upright by herself, she was able to help the friend in changing her shirt and then her pants. As the friend left to get the appellant's help in washing the victim's soiled clothes, the victim remained on the bed talking incoherently about wanting to go back into the bathtub. After the friend returned with the appellant, the victim was leaning partly on and partly off the bed, so the friend eased her onto the floor. He left her there with the thought that she could just "sleep it off."

Shortly after he left, the friend discussed the victim's condition with another Airman who became concerned, believing that it was better for everyone if the victim were taken back to her own room. The two returned to the appellant's suite and tried to convince the appellant to return the victim to her room. The appellant, after some delay, came to the door, but rebuffed their suggestions without letting them in the room. During this time, the victim's slurred, drunken speech could be heard from inside the room. The appellant simply kept reiterating that the two should just trust him. The two other Airmen eventually gave up and left. The friend didn't see the appellant or the victim again until early the next morning. Although phone records indicate the friend and the appellant placed several phone calls, exchanged text messages, and had at least one six-minute phone conversation between 0233 and 0514, the friend could not recall the content of any of those exchanges.

The appellant testified that he and the victim engaged in consensual sexual activity when she was no longer intoxicated, but his version of events was unconvincing. He

---

[2] The appellant's suite was comprised of two rooms that were originally designed as separate rooms connected by a shared bathroom. Accordingly, the bathroom also served as a hallway of sorts connecting the appellant's two rooms.

claimed she only drank five shots, after which she stopped, saying the shots were disgusting. That part of his testimony was in conflict with his own earlier testimony that the victim had chosen the tequila and that it was "her favorite." After drinking tequila for about 30 minutes, the victim got up to go to the bathroom, stumbled, and then vomited on the floor. The appellant let his friend clean the bathroom and help the victim change clothes. He then saw the victim sleeping on top of a pile of laundry in his bedroom. The appellant next recalls being awakened on his couch around 0500 when the two Airmen came by in order to return the victim to her room.[3] His account of that discussion was that he dismissed the idea of moving her because no one knew where she was staying. After going back to sleep on his couch, the appellant asserts he was awakened when he heard a noise and then heard the victim call his name from the bedroom. At first he testified that this happened a few hours after the other Airmen came by but he then clarified that he wasn't sure how long he slept. According to him, he left the couch to go to the bathroom and ran into the victim near the bathtub. He testified that she no longer seemed intoxicated, but rather like she had just woken up. He explained that her quick recovery did not surprise him because "in [his] experience . . . when you're drinking a lot or at least a lot of the time when you throw up you generally just feel like really good right afterwards like you're ready to go."

The appellant asserted that, as the two stood in the bathroom, she began apologizing and then gave him "a peck on the lips." He claimed this escalated to mutual foreplay, during which he may have given her some hickeys on her chest. He removed his shorts and her shirt and touched the outside of her vagina. He testified that he did not "specifically remember" placing his finger inside her vagina, but it was possible he did. According to him, they settled into the bathtub, with him on the bottom and her on top, and she began guiding his penis toward her vagina, at which point he stopped because he did not have a condom. He stated that the entire interlude lasted two to three minutes. According to him, "[A]fter that we both got up and went out of the bathtub, put our clothes on and then went to my couch," where they talked until they fell asleep. With regard to his friend's recollection that the appellant had admitted "fingering" the victim, he testified that the friend misinterpreted him when he said they had "fooled around."

The victim did not immediately report the incident. Although she thought she may have been assaulted, she testified that she pushed that unpleasant thought out of her mind and concluded that she must have participated willingly without being able to remember it. Although she made two trips to Austin with the appellant and his friend shortly after the incident, they began to have disagreements, and she distanced herself from the appellant. Rumors also began to spread that the two had engaged in some kind of sexual activity, causing at least one Airman to make a joke in front of the victim about her

---

[3] During cross-examination, the appellant testified that he sent his friend a text message saying, "I'm sorry. Come over man," at 0514. That time was also reflected in phone records. The apparent timing inconsistency in the appellant's account of events between the 0500 visit from the two Airmen, his return to sleep on the couch, the interlude in the bathroom, and the 0514 text message was never clarified.

perceived promiscuity. The victim confided in a friend, who happened to be a medic, about the incident and the rumors. The medic, who had a duty to report such incidents to the sexual assault response coordinator, convinced the victim to report it, which she later did.

*Instruction Defining "Impairment"*

For this course of conduct, the appellant was charged with sexual assault for penetrating the victim's vulva with his finger while she was incapable of consenting to the sexual act due to impairment by alcohol, a condition that was known or reasonably should have been known by the appellant. Article 120(b)(3)(A), UCMJ. Accordingly, the military judge instructed the members:

> In the Specification of the Charge, the accused is charged with the offense of sexual assault, in violation of Article 120, U.C.M.J. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond reasonable doubt:
>
> (1) That at or near Laughlin Air Force Base, Texas, between on or about 17 August 2012 and on or about 18 August 2012, the accused committed a sexual act upon [the victim], to wit: penetrating the vulva of [the victim] with his finger;
>
> (2) That the accused did so when [the victim] was incapable of consenting to the sexual act due to impairment by an intoxicant, to wit: alcohol, and that condition was known or reasonably should have been known by the accused.

The military judge went on to define sexual act, vulva, and consent, but no other terms. In advising on consent, the military judge instructed the panel consistent with Article 120(g)(8) that:

> "Consent" means a freely given agreement to the conduct at issue by a competent person. . . . Lack of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent, or whether a person did not resist or ceased to resist only because of another person's actions. A sleeping, unconscious, or incompetent person cannot consent to a sexual act.

The appellant now argues the military judge erred by not defining the term "impairment" in the findings instructions to the panel. While discussing the draft

findings instructions, the trial counsel asked the military judge if he was going to provide a definition for "impairment by an intoxicant." Although the military judge responded that he would consider any draft instruction sent to him, the issue was never raised again on the record. The trial defense counsel did not request such an instruction, nor did counsel object to its absence after being provided with the final draft of the findings instructions.

The parties disagree on the standard of review that applies. Generally speaking, "[t]he question of whether the members were properly instructed is a question of law and thus review is de novo." *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014). Rule for Courts-Martial (R.C.M.) 920(f) provides: "Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error."[4] A military judge has a sua sponte duty, however, to provide the required instructions under R.C.M. 920(e)(1)–(6), such as those on reasonable doubt, the elements of the offenses, and affirmative defenses; the forfeiture rule in R.C.M. 920(f) does not apply to those required instructions. *See United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000). The appellant characterizes the victim's impairment as an element of the offense and accordingly argues the military judge had a duty to provide a definition. The government argues conversely that definitions of terms found within an element are not part of the mandatory instructions, and we must apply a plain error analysis due to the lack of defense objection to an omitted definition.

In support of the contention that impairment constitutes an element of the offense, the appellant points to case law from our fellow Courts of Criminal Appeals. He argues that in *United States v. Medina*, 68 M.J. 587 (N.M. Ct. Crim. App. 2009), and *United States v. Johanson*, 71 M.J. 688 (C.G. Ct. Crim. App. 2012), our fellow courts treated the definition of a "substantially incapacitated" victim as part of an element of the predecessor offense of aggravated sexual assault. He suggests this required the military judge in this case to sua sponte define "impairment" as part of an element of the charge under the current version of the statute.

We find this argument inapposite to this case as the determination of an offense's elements is inextricably tied to the language of the statute itself. "Determinations as to what constitutes a federal crime, and the delineation of the elements of such criminal offenses—including those found in the UCMJ—are entrusted to Congress." *United States v. Jones*, 68 M.J. 465, 471 (C.A.A.F. 2010). Congress superseded the prior version of Article 120, UCMJ, in the National Defense Authorization Act for Fiscal Year 2012. *See* Punitive Articles Applicable to Sexual Offenses Committed During the Period 1 October 2007 through 27 June 2012, *Manual for Courts-Martial, United States* (*MCM*), A28-1 (2012 ed.). In revising the language of the offense, Congress changed the nature

---

[4] Although Rule for Courts-Martial 920(f) states that the failure to object constitutes waiver, subsequent decisions have clarified this is actually forfeiture. *See United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

of the offense from engaging in a sexual act with a victim who is substantially incapacitated to an offense framed in terms of whether the victim was "incapable of consenting" due to impairment or disability. Article 120(b)(3), UCMJ. In light of this, we find that the military judge's formulation of and instruction on the elements of the offense and his instruction on consent was adequate to meet his obligation under R.C.M. 920(e)(1), as discussed further below.

The question of whether a word or phrase included within an element requires judicial definition is separate from whether the military judge properly provided instruction on the elements of the offense. *See United States v. Glover*, 50 M.J. 476, 478 (C.A.A.F. 1999). We test the absence of a specific definition of "impairment" using the plain error test made applicable by R.C.M. 920(f). Under plain error review, the appellant has the burden of showing there was error, that the error was plain or obvious, and that the error materially prejudiced a substantial right of the appellant. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011).

We find that the military judge's failure to define impairment under these circumstances was not error, much less plain error. "Words generally known and in universal use do not need judicial definition." *United States v. Nelson*, 53 M.J. 319, 321 (C.A.A.F. 2000) (quoting *United States v. Gibson*, 17 C.M.R. 911, 935 (C.M.A. 1954)) (internal quotation marks omitted); *see also United States v. Payne*, 73 M.J. 19, 26 n.10 (C.A.A.F. 2014). In the context at issue here ("incapable of consenting to the sexual act due to impairment by an intoxicant"), the word "impairment" is used in the normal sense of the word in common usage and requires no judicial definition, especially when linked with the statutory definition of consent provided by Congress, as discussed further below.[5]

*Instruction Defining "Competent"*

In instructing the panel, the military judge told the panel, "'Consent' means a freely given agreement to the conduct at issue by a *competent* person." (Emphasis added). After closing for deliberations, the members passed a written question to the military judge. The question read, "What is the legal definition of competent in terms of this case?" The following colloquy between the military judge and counsel ensued:

> [Military Judge]: My review of the [*MCM*] and the *Benchbook*[6] contended [sic] there is no particular legal definition for the word "competent." It's used in a number of places in the instructions interestingly, including that they must be convinced by legal and competent evidence. I'm

---

[5] We note that the appellant has not stated what definition of "impairment" the military judge should have provided nor how the failure to provide the panel with that definition materially prejudiced his substantial rights.

[6] Department of the Army Pamphlet 27-9, *Military Judges' Benchbook* (1 January 2010).

certain that that's not their concern. I would guess that it has to do with the evidence of consent and the competent person's response. My intention is to tell them that there is no legal definition; that they should apply their common understanding of the word "competent" as it's used in their day to day life; and then refer them back to the instructions which may be useful in making a determination or applying the law to the facts of this case as they develop them. Is that sufficient for the parties?

[Trial Counsel]:     Yes, sir.

[Defense Counsel]:  Yes, sir.

The military judge subsequently instructed the panel,

[T]here is no particular legal definition for the word "competent." We oftentimes expect people to just apply common usage of words. You develop the facts, you look at the instructions that I've given you defining the law and you make a determination whether under the facts these things apply. So there is no particular legal definition that I can provide for you to give you a better vector on what that word means. That may not be satisfactory; but that is the state of the law at this stage.

The appellant now contends the military judge erred by failing to define what a "competent" person is for purposes of consent when specifically asked to do so by the panel. We disagree.

As discussed above, R.C.M. 920(f) provides that, absent plain error, failure to object to an instruction constitutes forfeiture of any objection. The appellant must show that there was error, that the error was plain or obvious, and that the error materially prejudiced a substantial right. *Girouard*, 70 M.J. at 11.

"The military judge has an independent duty to determine and [provide] appropriate instructions to the panel." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Westmoreland*, 31 M.J. 160, 163–64 (C.M.A. 1990). While military judges may craft ad hoc instructions that are not inconsistent with the law, they have "substantial discretionary power in deciding on the instructions to give." *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (quoting *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (internal quotation marks omitted).

As the military judge indicated, "competent" in this context is not expressly defined in the UCMJ, the *MCM*, or the *Benchbook* relative to this offense. Under these circumstances, we find that the military judge's decision whether or not to craft a particularized definition in the absence of either statutory or case law guidance was a matter within his discretion. *But see United States v. Long*, 73 M.J. 541, 545 (Army Ct. Crim. App. 2014) (holding that "competent person" is a legal term of art that is fundamental to a panel's decision under the predecessor statute and warrants proper instruction by the military judge and then finding its definition is found within the statutory definition of consent).[7]

The policy reasons behind the forfeiture rule in R.C.M. 920(f) are at their zenith in cases where an appellant, for the first time on appeal, suggests that the military judge erred in failing to define a term for which no ready definition is provided in the law. As our superior court has previously held,

> If defense counsel believed that further amplification of the law by the military judge was warranted, the time to request such modifications was at trial, when the military judge could have tailored any requested wording to the law and the evidence. Counsel was actively engaged in the consideration of the instruction at trial. Under these circumstances, there was no plain error.

*United States v. Simpson*, 58 M.J. 368, 378 (C.A.A.F. 2003).

We find on the facts of this case that the military judge's instructions to the members to "just apply [the] common usage" of the word "competent" was not plain error when considered within the context of all the instructions provided to them. The government was required to prove beyond a reasonable doubt that (1) the appellant engaged in sexual activity with the victim (2) when he knew or should have known she was incapable of consenting due to her level of alcohol impairment. When the panel was instructed that consent in this context means a "freely given agreement," the members were effectively charged with determining whether the victim had, at the time of the

---

[7] The Army Court of Criminal Appeals' opinion in *United States v. Long* was issued after the end of the appellant's trial. Our sister court's holding in *Long* will not resolve the issue presented in this case, which involves a different statute. *United States v. Long*, 73 M.J. 541 (Army Ct. Crim. App. 2014). In *Long*, the court held that the same predecessor Article 120, UCMJ, 10 U.S.C. § 920, statute that included the "competent person" language within the definition of consent also included a definition of "competent person." *Id.* at 545. That definition stated a variety of conditions under which a person could not consent (and thus was not competent to consent), including, inter alia, tender age and lack of capacity to appraise the nature of the sexual conduct at issue. Article 120(t)(14)(A)–(B), UCMJ. For the statute at issue in the instant case, however, the comparable definition of consent now states, "The term 'consent' means a freely given agreement to the conduct at issue by a competent person. . . . A sleeping, unconscious, or *incompetent* person cannot consent." Article 120(g)(8)(A)–(B), UCMJ (emphasis added). This circular language therefore does not assist in defining the word "competent" short of a sleeping or unconscious victim.

sexual activity, freely agreed to engage in it. The victim could not "freely" agree to an activity unless she was capable of agreeing, or, in other words, unless she was "competent" to agree. A further definition of the word "competent" was unnecessary, and the lack of such a further definition did not materially prejudice a substantial right of the appellant.[8]

*Factual and Legal Sufficiency*

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for factual sufficiency is whether, after weighing the evidence . . . and making allowances for not having . . . observed the witnesses," we ourselves are "convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)) (internal quotation marks omitted). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *Turner*, 25 M.J. at 324). Applying these standards to the record in this case, we find the evidence legally and factually sufficient to support the findings of guilt.

As the military judge instructed, the offense charged has two elements: (1) that the accused committed a sexual act upon the victim, specifically, penetrating her vulva with his finger; and (2) that he did so when the victim was incapable of consenting to the sexual act due to impairment by alcohol, and that he knew or reasonably should have known of that condition.

---

[8] The appellant has not stated what definition of "competent" the military judge should have provided nor how the failure to provide the panel with that definition materially prejudiced his substantial rights. We note that our sister court recently published a decision that states the following:

> Article 120 defines "consent" as "a freely given agreement to the conduct at issue by a competent person" and goes on to state that a "sleeping, unconscious, or incompetent person cannot consent." Art. 120(g)(8), UCMJ. Reading these provisions together, to prove a violation of Article 120(b) or (d), the Government must prove that a listed condition rendered the complainant incapable of entering a freely given agreement. Here, the terms "competent" and "incompetent" in the definitions section merely refer back to the punitive language regarding those incapable of consenting; it adds no further punitive exposure. Thus, in this context, a "competent" person is simply a person who possesses the physical and mental ability to consent. An "incompetent" person is a person who lacks either the mental or physical ability to consent due to a cause enumerated in the statute. To be able to freely give an agreement, a person must first possess the cognitive ability to appreciate the nature of the conduct in question, then possess the mental and physical ability to make and to communicate a decision regarding that conduct to the other person.

*United States v. Pease*, __ M.J. __, slip op. at 12–13 (N.M. Ct. Crim. App. 14 July 2015).

We ourselves, after making allowances for not having observed the witnesses, are convinced beyond a reasonable doubt of the appellant's guilt. We find the appellant's version of the encounter in the bathroom not credible. We find no reason why, in a suite with a bed and a sofa, the victim would call out to the appellant to meet her in the bathroom, become so overcome with ardor that she would tumble into the bathtub with the appellant, guiding his penis toward her vagina, until they realized that they had no condoms. We also do not find believable that after this alleged sudden fit of desire, upon finding they had no condoms, they simply stopped any intimate conduct altogether, put on their clothes, and retired to the living room to lie down on separate parts of the oversized sofa. In conjunction with the unlikely timing incorporated in his version of events, we find his far-fetched account unworthy of belief. Instead, we credit the testimony that the appellant was completely aware of how intoxicated the victim was, resisted efforts by other Airmen to escort the victim back to her room, and expressed concern the next day that the victim may have believed he took advantage of her. We are convinced beyond a reasonable doubt that the soreness the victim felt was due to the appellant's penetration of her vagina with his finger and that he did so at a time when he knew or reasonably should have known she was incapable of consenting due to her intoxication.

Additionally, after evaluating the evidence in the light most favorable to the government, a reasonable fact-finder could have found these elements established beyond a reasonable doubt. The victim's soreness the next morning, in conjunction with the appellant's admission at trial that he may have penetrated the victim's vagina is sufficient to find the sexual act occurred. Similarly, taking the evidence in the light most favorable to the prosecution, the friend's account of the victim being so intoxicated that she could not walk unaided and was vomiting, and he in fact had to move her to the floor to prevent her from falling off the bed, supported the conclusion that she remained incapable of consent up until the time when she awoke and returned to her room to change.

*Due Process Challenge to Article 120, UCMJ*

We review the constitutionality of a statute de novo. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005).

The Due Process Clause of the Fifth Amendment[9] "requires 'fair notice' that an act is forbidden and subject to criminal sanction" before a person can be prosecuted for committing that act. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (quoting *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)). Due process "also requires fair notice as to the standard applicable to the forbidden conduct." *Id.* (citing *Parker v. Levy*, 417 U.S. 733, 755 (1974)). In other words, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Parker*, 417 U.S. at 757 (citing *United*

---

[9] U.S. CONST. amend. V.

*States v. Harriss*, 347 U.S. 612, 617 (1954)). In short, a void for vagueness challenge requires inquiry into whether a reasonable person in the appellant's position would have known that the conduct at issue was criminal. *See, e.g., Vaughan*, 58 M.J. at 31 (upholding a conviction under the General Article for leaving a 47-day-old child alone on divers occasions for as long as six hours; while the Article did not specifically list child neglect as an offense, the appellant "should have reasonably contemplated that her conduct was subject to criminal sanction, and not simply the moral condemnation that accompanies bad parenting"); *United States v. Sullivan*, 42 M.J. 360, 366 (C.A.A.F. 1995) ("In our view, any reasonable officer would know that asking strangers of the opposite sex intimate questions about their sexual activities, using a false name and a bogus publishing company as a cover, is service-discrediting conduct under Article 134[, UCMJ].").

In addition, due process requires that criminal statutes be defined "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This "more important aspect of the vagueness doctrine" requires that the statute "'establish minimal guidelines to govern law enforcement'" rather than "'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574–75 (1974)) (alteration in original).

The relevant provision of Article 120(b)(3), UCMJ, makes it a crime to

> commit[] a sexual act upon another person when the other person is incapable of consenting to the sexual act due to— (A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person; or (B) a mental disease or defect, or physical disability, and that condition is known or reasonably should be known by the person.

A "sexual act" is defined, in relevant part, as "the penetration, however slight, of the vulva or anus or mouth of another by any part of the body or by any object, with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person." Article 120(g)(1)(B), UCMJ. With regard to consent, the statute provides "[a] sleeping, unconscious, or incompetent person cannot consent." Article 120(g)(8)(B), UCMJ.

The appellant specifically avers that the use of the terms impairment and competent, without judicial definition, render the statute void for vagueness. As the Supreme Court has observed, we do not evaluate the statute in the abstract. "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *Parker*, 417 U.S. at 757

(quoting *United States v. National Dairy Corp*., 372 U.S. 29, 33 (1963)) (internal quotation marks omitted).  In this case, the appellant is charged with engaging in a sexual act with a woman who was so intoxicated that she could not walk unaided from the bathroom to the bed in the adjoining room.  While under other facts the terms cited may leave some ambiguity to the degree of impairment necessary to render a person incapable of consenting, "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."  *Id*. at 759 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)) (internal quotation marks omitted).

We find appellant's arguments that Article 120(b)(3), UCMJ, is void for vagueness unconvincing.  The appellant was on reasonable notice that his conduct was subject to criminal sanction.  This issue is without merit.

*Victim Impact Statement*

The appellant claims, also for the first time on appeal, that the content and late submission of the victim impact statement constituted error in the staff judge advocate's recommendation.  According to the appellant, the statement's late submission and content was impermissible under the applicable Air Force Instruction.  The standard of review for determining whether post-trial processing was properly completed is a question of law reviewed de novo.  *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000).  R.C.M. 1106(f)(6) provides:  "Failure of counsel for the accused to comment on any matter in the recommendation or matters attached to the recommendation in a timely manner shall waive later claim of error with regard to such matter in the absence of plain error."[10] Accordingly, we apply the test for plain error set out above.

Assuming without deciding that either the content or late submission of the victim impact statement rendered the staff judge advocate's advice plainly erroneous, the appellant was not materially prejudiced.  Pursuant to R.C.M. 1107(b)(3)(B)(iii), the convening authority may consider "[s]uch other matters as the convening authority deems appropriate.  However, if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut."  The appellant was given a copy of the victim impact statement and chose not to object to the statement or rebut it. The convening authority had discretion to consider it independent of the regulatory provisions concerning victim impact statements.  Accordingly, the appellant was not materially prejudiced by any alleged regulatory defect in handling the statement.

---

[10] As with R.C.M. 920(f) discussed above, despite the use of the term waiver in R.C.M. 1106(f)(6), failure to object legally constitutes forfeiture.  *Sousa*, 72 M.J.at 651–52.

*Post-trial Delay*

Finally, the appellant asserts that this court should grant him meaningful relief in light of the 144 days that elapsed between completion of trial and the convening authority's action. Under *United States v. Moreno*, courts apply a presumption of unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial." 63 M.J. 129, 142 (C.A.A.F. 2006). The appellant does not assert any prejudice, but argues that the court should nonetheless grant relief under *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002).

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Bischoff*, 74 M.J. 664 (A.F. Ct. Crim. App. 2015). The factors include the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 670. The appellant has not asserted any additional factors merit consideration in this case. The length of the delay only exceeded the standard by 24 days. While the time required for processing is normally completely within the control of the government, we note that appellant's counsel took from 20 November 2015 to 19 December 2015 to review the draft transcript and obtained an extension of time to file clemency materials. The record itself was substantial, comprising 14 volumes. The offense, a violation of Article 120, UCMJ, was a serious offense. Finally, there was no evidence of bad faith or gross negligence on the part of the government. On the whole, we find the delay, although presumptively unreasonable, to be reasonable in this case and conclude no *Tardif* relief is warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court