# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB,[1] LIND, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 CURTIS R. LONG**
**United States Army, Appellant**

ARMY 20120114

Headquarters, Fort Carson
Mark A. Bridges, Military Judge
Colonel Randy T. Kirkvold, Staff Judge Advocate

For Appellant:  Captain Brian J. Sullivan, JA (argued); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Brian J. Sullivan, JA (on brief).

For Appellee:  Captain Timothy C. Erickson, JA (argued); Major Katherine S. Gowel, JA; Major Alison L. Gregoire, JA (on brief).

30 January 2014

---------------------------------
OPINION OF THE COURT
---------------------------------

KRAUSS, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of one specification of rape by using force in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. §920 (2006 & Supp. IV) [hereinafter UCMJ].  The court-martial acquitted appellant of one specification of aggravated sexual assault by causing bodily harm and one specification of assault consummated by a battery alleged under Articles 120 and 128, UCMJ, 10 U.S.C. §920, 928 (2006 & Supp. IV).  Prior to these contested charges, appellant pleaded guilty to one specification of a violation of a lawful

---

[1] Senior Judge Yob took action in this case prior to his permanent change of duty station.

general regulation for underage drinking in violation of Article 92, UCMJ, 10 U.S.C. §892 (2006). The panel sentenced appellant to a bad-conduct discharge and confinement for one year. The convening authority approved the adjudged sentence.

This case is before the court for review under Article 66, UCMJ. Appellant argues the military judge erred by providing the panel a definition of competence to complement instructions regarding the affirmative defense of consent and thereby improperly introduced a theory of criminality that was not charged, rendering his conviction unreliable. We disagree with appellant and conclude the judge appropriately provided a definition of "competent person" in response to a request for such definition from the panel and despite appellant's objection. We find the military judge's definition was essentially correct and did nothing to undermine the reliability of appellant's conviction for rape.[2]

**BACKGROUND**

Appellant was charged with the rape of SB by penetrating her vulva with his penis using strength sufficient that SB could not avoid or escape the sexual conduct. Alternatively, the government charged appellant with aggravated sexual assault by causing bodily harm by holding SB's neck, throat, and hands, as well as assault consummated by a battery by holding and squeezing SB's neck, throat, and hands with his hands. All allegations were based on the same alleged event.

SB testified that appellant forced himself upon her sexually in a manner consistent with the specifications alleged. Although SB testified she was "tired," "drunk," and "stumbling," SB never testified she was incapacitated by alcohol or fatigue, or that she offered anything other than conscious resistance to appellant's sexual advances and efforts. That resistance included telling appellant "no," to "stop," and kicking and pushing appellant away from her. She did testify that while appellant assaulted her, she was "dizzy," "was still feeling sick from before," and that her consumption of alcohol made it more difficult to resist. The government also introduced evidence of appellant's admission to a CID agent that SB said "no" and that she "didn't want to do this" before appellant committed sexual acts upon her.

Though the government presented evidence of SB's intoxication and appellant's knowledge of and exploitation of her drunken and sickened state, the government consistently presented its case as one of rape by force throughout the proceedings.

---

[2] Appellant also raises matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which merit neither discussion nor relief.

Appellant presented a defense of consent and false accusation.[3] Through cross-examination of the victim and direct examination of a witness present at the scene of the alleged offense, the defense disputed SB's contentions that she resisted and refused consent.

There were no objections to the judge's initial provision of instructions, which included all standard instructions relevant to the charges alleged and the affirmative defenses of consent and mistake of fact as to consent. The instructions on rape by using force included the necessity to find appellant penetrated SB's vulva by force as alleged, that being "strength sufficient that she could not avoid or escape the sexual conduct." The judge then defined force as "an action to compel submission of another or to overcome or prevent another's resistance by physical violence, strength, power, or restraint applied to another person, sufficient that the other person could not avoid or escape the sexual act." The judge later instructed:

> The evidence has raised the issue of whether [SB] consented to the sexual act concerning the offenses of rape and aggravated sexual assault, as alleged in Specifications 1 and 2 of Charge I.
>
> Evidence of consent is relevant to whether the prosecution has proven the elements of the offenses beyond a reasonable doubt.
>
> Consent is also a defense to the offenses of rape and aggravated sexual assault, as alleged in Specifications 1 and 2 of Charge I.
>
> "Consent" means words or overt acts indicating a freely given agreement to the sexual conduct by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the accused's use of force, threat of force, or placing another person in fear, does not constitute consent. A current or previous dating relationship by itself or the manner of dress of the person involved with the accused in the sexual conduct at issue shall not constitute consent.

---

[3] Appellant secured a mistake of fact instruction but did not offer argument or otherwise rely on mistake of fact during findings.

> The prosecution has the burden to prove beyond a reasonable doubt that consent did not exist. Therefore, to find the accused guilty of the offenses of rape and aggravated sexual assault, as alleged in Specifications 1 and 2 of Charge I, you must be convinced beyond a reasonable doubt that at the time that [sic] the sexual act alleged, SB did not consent.

There was neither objection nor request for additional instructions from either party. When the judge asked if any member of the court had any questions, the president said: "In your instructions you instructed us that only a competent person can give consent. Can you define 'competence' legally?" After initiating discussion with counsel on the matter, the judge asked the president: "And actually . . . let me just clarify; are you asking this question in relation to her state of intoxication at the time?" The president responded, "yes, sir" and the judge stated: "Okay, that's what I thought." The judge then called a hearing outside the presence of the members to address the question of further instruction.

The defense objected to the judge giving any additional instruction "on the grounds that [the defense did not] believe that any evidence was produced that would warrant giving that definition of consent." Over defense objection, the judge decided to provide the panel a definition of consent. The instruction was taken from a note to the military judges' benchbook under the instruction for aggravated sexual contact.[4] Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3-45-4, n.8 (1 Jan. 2010). At first, the judge intended to offer only that portion of the instruction relative to intoxication, but he ultimately provided the entire instruction offered in the Benchbook at defense counsel's behest in light of their failed objection.

The judge stated his reasons for giving the instruction in the Article 39(a), UCMJ, hearing:

> I think, as [the president of the panel] has clearly indicated, his concern is whether or not somebody who is intoxicated or has been drinking is a competent person to

---

[4] We realize the military judge used the "consent" instruction for a crime not at issue in this case. However, we note that the consent instruction for abusive sexual contact is identical to the statutory definition of consent in Article 120, UCMJ, as well as the Benchbook's consent instruction for rape. *Compare* Benchbook, para. 3-45-4, n.8, with *Manual for Courts-Martial* (2008 ed.) [hereinafter *MCM*], Pt. IV, ¶ 45.a(t)(14) and Benchbook, para. 3-45-3, n.10.

4

give consent. So, I think that this instruction that I propose to give helps the members understand what someone's level of intoxication would mean with respect to consent.

I think if I don't give the instruction the members are going to be left hanging in the wind to decide whether or not somebody who is drunk can consent. I mean this instruction makes clear that somebody who is drunk can consent, as long as they're not substantially incapable of understanding the conduct at issue. So, I think it is a helpful instruction and that's why I'm going to give it to the members.

The judge proceeded to reiterate to the panel the instruction on consent, adding:

A person cannot consent to sexual activity if that person is substantially incapable of appraising the nature of the sexual conduct at issue, due to mental impairment or unconsciousness resulting from consumption of alcohol, drugs, a similar substance, or otherwise; substantially incapable of appraising the nature of the sexual conduct at issue due to mental disease or defect, which renders the person unable to understand the nature of the sexual conduct at issue; or substantially incapable of physically declining participation in the sexual conduct at issue; or substantially incapable of physically communicating an unwillingness to engage in the sexual conduct at issue.

The court-martial convicted appellant of rape by force and acquitted him of aggravated sexual assault and assault consummated by a battery.

## LAW AND ANALYSIS

First, we find the military judge did not err by providing a definition of "competent person" in response to the president's query. Second, we hold the definition provided was correct though not entirely complete. Third, we find the judge did not introduce a theory of criminal liability upon which the court-martial might improperly convict.

Whether a panel was properly instructed is a question of law which we review de novo. *United States v. Mott*, 72 M.J. 319, 325 (C.A.A.F. 2013) (citing *United States v. Garner,* 71 M.J. 430, 432 (C.A.A.F. 2013)).

"The military judge has an independent duty to determine and deliver appropriate instructions." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *United States v. Westmoreland*, 31 M.J. 160, 163-64 (C.M.A. 1990)). The judge "must bear the primary responsibility for assuring that the [panel] properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law." *Id.* (citing *Westmoreland*, 31 M.J. at 164) (citation and quotation marks omitted). It is entirely appropriate for the military judge to offer definition of legal terms when prompted by reasonable inquiry from a member of the panel. *See Westmoreland*, 31 M.J. at 163-65; *see also Bollenbach v. United States*, 326 U.S. 607, 611-613 (1946). This is precisely what happened in this case when the president of the panel asked the military judge to provide a legal definition of "competent person" for the purposes of determining consent to sexual activity.

The evidence raised consent as an issue. The judge had already properly instructed on consent. Faced with a panel that expressed uncertainty over definition of a term contained in the original instructions, a term fundamental to their decision, the judge properly offered a definition of "competent person." The judge fulfilled his obligation to ensure the panel was fully equipped to resolve those questions of fact necessary for proper resolution of the charges before them for judgment. Whether we agree with the judge's reasons or whether his impression was a correct one or not, competence, in this context, is a legal term of art whose definition is set by statute and whose meaning may or may not comport with a member's understanding. It, therefore, warrants proper instruction from the judge. *See generally United States v. Hardy*, 46 M.J. 67, 75 (C.A.A.F. 1997) ("The comments of the military judge should be considered in the context of the specific question raised by the members and the full body of the instructions given by the military judge, both at this point in the proceedings and prior to the initial deliberations of the members.").

The judge's definition drawn from the Benchbook originates in the very statute under which appellant was charged and convicted and constitutes the definition of competent person, albeit in the negative, for the purposes of that statute. *MCM*, pt. IV, ¶ 45.a(t)(14). Lest there be any doubt, we hold here that the statutory definition of a competent person for purposes of Article 120, UCMJ, at the time of this case is that provided in paragraph 45.a(t)(14), Part IV, *Manual for Courts-Martial* (2008 ed.) beginning with the phrase "[a] person cannot consent to sexual activity if −" and proceeding through to the end of paragraph 45.a(t)(14)(B).

A full definition of consent includes definition of competence to consent. *MCM*, pt. IV, ¶ 45.a(t)(14). *See also United States v. Neal*, 68 M.J. 289, 297-98 (C.A.A.F. 2010). A full definition of competence to consent includes reference, first, to an alleged victim's age and second, to the alleged victim's capacity to appraise the nature of the sexual conduct at issue, to physically decline participation

6

in the sexual conduct, and to physically communicate unwillingness to engage in the sexual conduct. *MCM*, pt. IV, ¶ 45.a(t)(14)(A)-(B). While it is better to provide the full definition of competence, the judge's failure to reference the victim's age does not prejudice appellant as there was no dispute that SB was 19 years old at the time of the assault.

There is nothing inconsistent with the definition of competence and the offense of rape by using force. Force is defined as "an action to compel submission of another or to overcome or prevent another's resistance by physical violence, strength, power, or restraint applied to another person, sufficient that the other person could not avoid or escape the sexual act." *MCM*, pt. IV, ¶ 45.a(t)(5). *See also United States v. Alston,* 69 M.J. 214, 216 (C.A.A.F. 2010). Therefore, as long as the government proves beyond a reasonable doubt that an accused used such force to cause the other person to engage in a sexual act, it does not matter if the other person is competent to consent or not. *MCM*, pt. IV, ¶ 45.a(a)(1).

Neither the affirmative defense of consent nor its competence component obviates or undermines the burden upon the government to prove force in a case charged such as this. The instructions provided by the judge on the government's burden to prove force were correct, and there is nothing in the court-martial's findings that provides any basis to doubt the reliability of appellant's conviction of rape by using force.

Appellant was not charged with rape by either rendering SB unconscious or by administration of an intoxicant, nor was appellant charged with aggravated sexual assault upon a substantially incapacitated person. *See MCM*, pt. IV, ¶¶ 45.a(a)(4)-(5), 45.a(c)(2). Though the definition of competence includes reference to unconsciousness, there is no danger that an accused charged with rape by using force will be unjustly convicted of any of these other offenses. The law as provided in the standard instructions ensures that guilt for rape by force comes only where the accused compels submission or otherwise overcomes or prevents resistance. The risk of conviction on a theory uncharged is therefore based on speculation alone. *See generally United States v. Taylor*, 53 M.J. 195, 199 (C.A.A.F. 2000).

There is also no evidence that SB was unconscious when appellant committed a sexual act upon her. The evidence in this case establishes that SB was competent; that she did not consent; and that she both verbally and physically resisted appellant's sexual conduct. The evidence further includes appellant's acknowledgement that SB said "no" to his sexual advance, that she "didn't want to do this," and that she brushed his hand away from her breast before he completed the sexual act alleged. In that sense, the panel's findings of guilt comport fully with the evidence.

Any premise that one substantially impaired by alcohol, as contemplated under the Article 120 in effect at the time of this case, cannot be the victim of rape by force is unpersuasive. Even if a panel faced with a similar situation were to find that a person was substantially incapable of *appraising the nature of the sexual conduct* at issue, it can very well find that the person offered resistance to whatever bodily harm it was that she did appreciate at the time. In other words, a person who is substantially incapable of appraising the nature of the sexual conduct yet able to appreciate unwanted physical contact and able to manifest lack of consent one way or another may be the victim of a rape by force if, of course, an assailant uses force to overcome that resistance. Similarly, even if a panel were to find that a person was substantially incapable of physically declining participation in sexual conduct, it may nevertheless find that the person could effectively articulate declination to participate in sexual conduct. And, finally, even if a panel were to find that a person was substantially incapable of physically communicating unwillingness to engage in sexual conduct, it may nevertheless find that the person could otherwise physically manifest unwillingness to engage in sexual conduct. In each such case, if an assailant uses force as defined, he is subject to conviction for rape. *See MCM*, pt. IV, ¶¶ 45.a(t)(5), 45.a(t)(14)(B).

Therefore, in a case charged as rape by force, if a person is not unconscious but substantially incapacitated otherwise, the question for the finder of fact is the same as that involving a fully-capable person: Did the accused compel the alleged victim's submission or otherwise overcome or prevent that person's resistance by force as defined under Article 120, UCMJ. If not, the accused is not guilty of rape by using force; if so, then the accused is guilty of rape by using force.

"Absent evidence to the contrary, this [c]ourt may presume that members follow a military judge's instructions." *Id.* at 198. Whichever way one may speculate about what the panel found beyond a reasonable doubt, there is sufficient basis in the evidence for conviction.[5] But we need not speculate. SB was competent. She refused to consent to sexual conduct with appellant. She verbally and physically resisted his efforts to commit sexual acts upon her. Appellant used force to overcome that resistance and compel her submission. The evidence is

---

[5] "With minor exceptions for capital cases, a 'court-martial panel, like a civilian jury, returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to convict or acquit.'" *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (quoting *Hardy*, 46 M.J. at 73).

8

legally and factually sufficient to establish appellant's guilt for rape by using force and there is nothing illogical or inconsistent about the panel's findings.[6]

While we agree with appellant that there was insufficient evidence to find that SB was incompetent in accord with the statutory definition, we consider the defense objection to the additional instruction at issue on that ground unpersuasive. The evidence raised the issue of consent; the government was required to prove lack of consent beyond a reasonable doubt; and the panel was required to decide whether SB consented to sexual activity. Appellant asserted the defense of consent and requested instruction on the matter. Any argument that the defense was somehow not on notice of the relevance of competence to consent falls on deaf ears. As discussed, competence is an integral aspect of the statutory definition of consent for the offense charged in this case. Appellant cannot now successfully complain that the defense relied upon at trial was somehow undermined by its very statutory definition.

The appellant received a fair trial, the judge appropriately provided instructions in light of the law, evidence, and inquiry from the panel, and the conviction of rape by using force is reliable.

---

[6] Appellant argues that because the court-martial acquitted him of the lesser offenses alleging the force relied upon by the government to prove rape by force, the conviction for rape is therefore inconsistent and indicates the panel relied on substantial incapacity to improperly convict appellant of rape by force. If we were to consider the findings inconsistent, it would have no effect on the validity of appellant's conviction. We do not meddle with inconsistent findings of a court-martial on appeal. *See, e.g., United States v. Lyon*, 15 U.S.C.M.A. 307, 313, 35 C.M.R. 279, 285 (1965) ("An inconsistent verdict is not usually a cause for relief. The reason for the rule is that the court-martial may merely have given the accused 'a break.'") (internal citations omitted). There are any number of possibilities for the panel's findings – all within the legitimate purview of the court-martial's power, authority and responsibility. The court-martial may very well have properly concluded that it was improper to convict appellant of both greater and lesser offenses based on the same exact act, for example. *See United States v. Watson*, 31 M.J. 49, 53 (C.M.A. 1990) (quoting *United States v. Powell*, 469 U.S. 57, 65 (1984)) ("[I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.").

LONG — ARMY 20120114

**CONCLUSION**

On consideration of the entire record, including those matters raised by appellant pursuant to *Grostefon*, the parties' briefs and oral argument, the findings of guilty and the sentence are AFFIRMED.

Senior Judge YOB and Judge LIND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court