# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————————

### No. 201600331

————————————————

### UNITED STATES OF AMERICA
Appellee

v.

### GERARDO R. GOMEZ
Lance Corporal (E-3), U.S. Marine Corps
Appellant

————————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Major M.D. Sameit,USMC.
Convening Authority: Commanding General, 1st Marine Division (REIN), Camp Pendleton, CA.
Staff Judge Advocate's Recommendation: Major M.J. Stewart, USMC.
For Appellant: Lieutenant Commander William L. Geraty, JAGC, USN.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC, USN; Lieutenant Commander Justin C. Henderson, JAGC, USN.

————————————————

Decided 4 April 2018

————————————————

Before HUTCHISON, PRICE, and FULTON, *Appellate Military Judges*

————————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————————

PRICE, Judge:

Officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of violation of a lawful general order, three specifications of sexual assault, and one specification of abusive sexual contact, in violation of Articles 92 and 120,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892 and 920.[1] The members sentenced the appellant to five years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed.

The appellant raises seven assignments of error (AOEs): (1) the government violated his due process right to notice when it charged him with sexual assault under a bodily harm theory, but convicted him under an incapable of consenting due to impairment by alcohol theory; (2) the term *incompetent* as applied at trial was unconstitutionally vague; (3) the military judge abused his discretion by admitting evidence of the alleged victim's alcohol consumption; (4) the military judge abused his discretion by instructing the members on the alleged victim's competence and capacity to consent, after ruling that competence and capacity were not at issue, denying the appellant a fair trial; (5) the military judge erred by declining to provide a defense-requested instruction addressing the alleged victim's capacity to consent and the relevance of her intoxication; (6) the military judge improperly instructed the members on the alleged victim's competence and capacity to consent; and (7) the evidence is legally and factually insufficient to prove any violation of Article 120, UCMJ.

Having carefully considered the record of trial, the parties' submissions, and oral argument, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights.[2] Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

RMR, a civilian, was staying with a friend, Mrs. U, and her husband LCpl U, near Camp Pendleton, California. When RMR found herself locked out of the Us' apartment she contacted the appellant, whom she knew through social media but had never met in person. The appellant picked up RMR and drove her onboard Camp Pendleton where they spent several hours together, first talking in his barracks room and later socializing with a group of Marines. The appellant asked RMR to spend the night with him, but she declined.

---

[1] Following announcement of the findings, the military judge ruled specifications 2-4 of Charge II constituted an unreasonable multiplication of charges and merged those specifications for findings and sentencing. Record at 548-50.

[2] We heard oral argument in this case on 31 October 2017 at the Georgetown University Law Center as part of our Outreach program.

At approximately 1800, the appellant drove RMR to the Us' apartment and left to meet some friends. Over the next several hours, RMR and Mrs. U consumed half a bottle of vodka, and RMR also drank one beer. Between 2016 and 2335 the appellant and RMR exchanged over 100 text messages. During the text conversation RMR agreed to spend the night with the appellant in his barracks room and said she was "[t]rying to get somewhat drunk but [kept] losing [her] drunk vibe."[3] After consuming the vodka and beer, RMR exhibited signs of alcohol impairment and vomited in the Us' bathroom.

While the appellant was enroute to the Us' apartment, Mrs. U sent a text to the appellant telling him that RMR was drunk and impatiently awaiting his arrival. LCpl and Mrs. U told RMR it was a bad idea for her to leave the apartment, but RMR insisted that she was fine and that she wanted to go with the appellant. LCpl U testified that RMR decided on her own to leave with the appellant. When the appellant arrived at the Us' apartment shortly after midnight, Mrs. U helped RMR walk to his car, and LCpl U informed the appellant that RMR was pretty drunk.

The appellant drove RMR to his barracks, stopping several times along the way so she could vomit or spit. Due to her physical state, the appellant carried RMR from his car to his barracks room. RMR felt sick and went into the appellant's bathroom and laid on the floor and toilet. The appellant told RMR, "we're dudes—we pee everywhere[,]" and she responded that she did not care because she needed to throw up.[4] RMR then vomited in the appellant's toilet. The appellant told RMR she could not lie in his bed smelling like "throw-up," and encouraged her to take a shower.[5]

RMR testified that she was an inexperienced drinker and had limited recall of events after drinking at the Us' apartment. RMR's inability to remember the evening's events was consistent with alcohol-induced blackout as described by expert witnesses. She did not recall the content of many of the texts she exchanged with the appellant including her agreement to stay in his room or coordinating her pick-up from the Us' apartment because of her self-described intoxication. She also did not recall the circumstances surrounding her departure from the Us' apartment or how she got to the appellant's barracks room. She remembered vomiting into the appellant's toilet and recalled him saying "that [her] friend told him to shower me,"

---

[3] Prosecution Exhibit (PE) 4 at 9.

[4] PE 12.

[5] *Id.*

which caused her to think something "wasn't right" because she had showered a few hours earlier.[6]

RMR also remembered being in the appellant's shower, seeing her feet while "bent over," with the appellant behind her "having sex with [her]."[7] She testified she experienced difficulty moving and speaking but nudged or elbowed the appellant several times in an effort to get him to stop, and then told him "no."[8] She also recalled being "laid down on [her] side," and feeling the appellant's fingers and then his penis inside her vagina.[9] She testified that she "tried to get him to stop . . . with [her] arm again, tried to nudge, and then . . . after making a couple noises, like 'Uh-uh' . . . implying no, [she] finally said, 'No.'"[10] She did not recall if he stopped after she said no but assumed he did.

While driving RMR back to the Us' apartment the next morning, the appellant said he wished he had "made better decisions that night."[11] RMR told Mrs. U that she had been sexually assaulted and reported the alleged offenses to the Naval Criminal Investigative Service (NCIS).

In cooperation with NCIS special agents, RMR engaged in a text-message conversation with the appellant. The appellant expressed regret throughout the conversation, texting, "I'm so sorry of [sic] what happened that night," and "I'm sorry for having sex with you."[12] Later, in a phone conversation recorded by NCIS, the appellant again expressed regret to RMR, described how intoxicated she was, and admitted he had sex with her in the shower and on the bed. He also informed RMR he had performed oral sex on her, wore a condom only during sexual intercourse in the shower, and that he ejaculated while not wearing a condom. RMR had not recalled or reported the oral sex and did not know if the appellant had worn a condom or ejaculated.

The appellant was arraigned on eight sexual offenses, which essentially alleged the same four acts of sexual misconduct under two different theories of liability—incapability to consent due to impairment by alcohol and bodily harm. He was charged with three specifications of sexual assault in violation

---

[6] Record at 194.

[7] *Id.*

[8] *Id.* at 195-97.

[9] *Id.* at 198.

[10] *Id.* at 199-200.

[11] *Id.* at 203.

[12] PE 3.

of Article 120(b)(3)(A) (penetration of RMR's vulva on three separate occasions when she was incapable of consenting due to impairment by alcohol), three specifications of sexual assault in violation of Article 120(b)(1)(B), UCMJ (penetration of RMR's vulva on three separate occasions by causing bodily harm), and two specifications of abusive sexual contact in violation of Article 120(d) (by placing his mouth on her vulva when she was incapable of consenting due to impairment by alcohol and by placing his mouth on her vulva, by causing bodily harm).[13]

Before the appellant entered pleas, the government withdrew and dismissed the four incapacity specifications. At an ensuing Article 39(a), UCMJ, hearing, the military judge questioned the trial counsel (TC) about the relevance of evidence of RMR's alcohol consumption. The TC responded that RMR's "level of intoxication is relevant to the matter of consent; not her capacity to consent, but whether or not she, in fact, did consent" to the three incidences of penetration.[14] With respect to the aggravated sexual contact offense, RMR had no independent recollection of the appellant placing his mouth on her vulva. Thus the TC asserted that there was "potential to argue that [RMR] did not have capacity [to consent] and she was not competent for that sexual contact."[15]

The trial defense counsel (TDC) argued that RMR's actions demonstrated that she had the capacity to consent since she expressed a lack of consent through physical actions and by verbally saying "No."[16] He then expressed concern that evidence of RMR's lack of memory "opens the door to capacity now becoming an argument" and that such an argument might mislead the members or cause them to conclude that RMR did not "have the capacity to consent."[17] The TDC then argued that the government should be precluded from arguing competence and capacity.

Based on the TDC's concerns, the military judge substantially limited the TC's ability to argue that RMR did not have the capacity to consent. The military judge acknowledged that RMR's alcohol use was relevant to the issue of consent. But he reasoned that since the government would seek to prove that the appellant committed bodily harm in order to sexually assault RMR, and because the government had dismissed the specifications alleging

---

[13] Charge Sheet.

[14] Record at 36.

[15] *Id*. at 36-37.

[16] *Id*. at 37-38.

[17] *Id*. at 38.

that RMR was incapable of consenting due to alcohol, he "d[id] not find that competence and capacity [wa]s in issue" based upon the parties' proffers and the exhibits he had examined.

The military judge directed the government to "limit [its] argument to whether or not this was by bodily harm" and precluded argument "that [RMR] was not competent in this case."[18] In response to a question from the TC, the military judge clarified that they were not to argue RMR lacked capacity but could argue all the surrounding circumstances.

The defense theory at trial was that RMR was competent to engage in sexual activity and that she either consented to the alleged sexual activity or, as the result of a reasonable mistake of fact, the appellant believed she consented to the sexual activity.

Additional facts necessary to resolution of the AOEs are included below.

## II. DISCUSSION

### A. Due Process and notice

The appellant argues that his Due Process rights were violated when he was "convict[ed] of an offense that was different from the charged offense."[19]

#### 1. Law

The Due Process Clause of the Fifth Amendment "requires 'fair notice' that an act is forbidden and subject to criminal sanction" before a person can be prosecuted for committing that act. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citing *United States v. Bivins*, 49 M.J. 328, 330 (C.A.A.F. 1998)). "The due process principle of fair notice mandates that an accused has a right to know what offense and under what legal theory he will be convicted." *United States v. Tunstall*, 72 M.J. 191, 192 (C.A.A.F. 2013) (citing *United States v. Jones*, 68 M.J. 465, 468 (C.A.A.F. 2010) (internal quotation marks and citation omitted)). "'[T]he Due Process Clause of the Fifth Amendment also does not permit convicting an accused of an offense with which he has not been charged.'" *Id.* (quoting *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011)) (alteration in original).

#### 2. Analysis

The appellant argues he was charged with sexual assault and abusive sexual contact alleging bodily harm but prosecuted and convicted of those offenses under a different legal theory—that the putative victim was

---

[18] *Id.* at 38-39.

[19] Appellant's Brief of 31 Mar 2017 at 17.

incapable of consenting due to impairment by alcohol. He asserts this violated his due process right to know what offense and legal theory of liability he had to defend against. We disagree and conclude the appellant was convicted of the offenses of which he was charged.[20]

First, the appellant was informed of the sexual offenses charged and the applicable legal theory—bodily harm—and then convicted of those offenses. *Tunstall*, 72 M.J. at 192.

He was charged with three specifications of violating Article 120(b)(1)(B), UCMJ—sexual assault by causing *bodily harm*—and one specification of violating Article 120(d), UCMJ—abusive sexual contact by causing *bodily harm*.

The sexual assault specifications alleged he penetrated RMR's vulva on two occasions with his penis and once with his finger "without her consent, by causing bodily harm to her, to wit: an offensive touching however slight."[21] The abusive sexual contact specification alleged he "plac[ed] his mouth on [RMR's] vulva, without her consent, by causing bodily harm to her, to wit: an offensive touching however slight."[22]

*Bodily harm* is a defined term in the relevant punitive article, and it put the appellant on notice that the government would have to prove lack of consent;[23] that consent "means a freely given agreement to the conduct at issue by a competent person[;]"[24] and that "*[a]ll the surrounding*

---

[20] *See generally United States v. Motsenbocker*, No. 201600285, 2017 CCA LEXIS 539 at *19-23 (N-M.Ct.Crim.App. 10 Aug 2017) (we found no merit in the appellant's argument that he was not on notice of what "he was required to defend against" where the government charged sexual assault by causing bodily harm and abusive sexual contact by causing bodily harm in violation of Articles 120(b)(1)(B) and 120(d), UCMJ), *rev. denied*, __ M.J. __, 2018 CAAF LEXIS 539 (C.A.A.F. Feb. 13, 2018).

[21] Charge Sheet. Article 120(b)(1)(B), UCMJ, states "[a]ny person . . .who . . . (1) commits a sexual act upon another person by . . . (B) causing bodily harm to that other person . . . is guilty of sexual assault[.]"

[22] Charge Sheet. Article 120(d), UCMJ, states "[a]ny person . . .who commits or causes sexual contact upon another person, if to do so would violate subsection (b) (sexual assault) had the sexual contact been a sexual act is guilty of abusive sexual contact[.]"

[23] Bodily harm means "any offensive touching of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact." Art. 120(g)(3), UCMJ.

[24] Art. 120(g)(8)(A), UCMJ. Consent means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or

*circumstances* are to be considered in determining whether a person gave consent[.]"[25] The specifications, therefore, provided the appellant notice that RMR's consumption of alcohol and level of intoxication were potentially relevant as "surrounding circumstances" in the court's determination of whether RMR consented to the sexual conduct in issue. In fact, prior to commencement of trial on the merits, the military judge explicitly (and correctly) found that "evidence that [RMR] was drinking is part of those surrounding circumstances and should be allowed in on the issue of consent."[26]

The statutory definition of consent as "a freely given agreement to the conduct at issue by a competent person" provides notice that when the "bodily harm" alleged is the sexual act or contact, as in this case, the victim's "competence" is at issue.[27] The plain language of the statute provided the appellant fair notice of the offense and legal theory under which he was convicted. *See United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first cannon [of statutory interpretation] is also the last: judicial inquiry is complete.") (citation and internal quotation marks omitted).

Second, the appellant's argument that he was prosecuted under a legal theory that RMR was incapable of consenting due to impairment by alcohol is unsupported by the record.

The military judge precluded the TC from arguing incapacity, and the TC complied throughout the trial. The TC mentioned a "competent person" only once in his closing argument when he paraphrased the military judge's instruction and then immediately detailed the factual bases for determining that RMR did not consent to the sexual conduct. Rather than focus on RMR's ability—or lack of ability—to consent, he highlighted RMR's physical and verbal resistance: "We have physical resistance. We have a verbal, No, in this case. This is important."[28] Consistent with the military judge's limitation, the

---

submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent. A current or previous dating or social or sexual relationship by itself or the manner of dress of the person involved with the accused in the conduct at issue shall not constitute consent.

[25] Art. 120(g)(8)(C), UCMJ (emphasis added).

[26] Record at 38.

[27] Art. 120(g)(8)(A), UCMJ.

[28] Record at 511.

TC also discussed the circumstances surrounding RMR's refusal to consent. RMR was intoxicated, sick, and had difficulty moving and speaking. But he did not argue that RMR was incapable of consenting due to alcohol intoxication. He closed his argument with "There was never that agreement. She told him, No."[29]

The only explicit reference to RMR's capacity, in argument, came from the TDC. In his opening the TDC stated: "And before I sit down, I want to emphasize this is not about capacity. As a matter of law and fact, the complaining witness was capable of consenting. [The appellant] had a reasonable mistake based on all of the evidence that the complaining witness consented to sex."[30]

In closing, the TDC argued:

> Make no mistake members, [RMR is] not too drunk. That is not [an] issue before you. It's not – [an] issue. . . . it is not an element of the charges. . . . Don't be distracted by this red herring for one minute to think that the complaining witness lacked the capacity to participate in a sexual encounter that took place that night.[31]

The appellant contends the limited evidence almost certainly means his abusive sexual contact conviction was based upon an incapacity theory and that there is a "substantial possibility" he was also convicted of the three sexual assaults under this same incapacity theory.[32] We disagree.

The limited evidence of which the appellant speaks is his admission to performing oral sex on RMR. His spontaneous, recorded admission was both credible and direct evidence this sexual contact occurred. In response to RMR's questions regarding what happened that night, the appellant admitted he did some "pretty crazy things like [placing his mouth on her vulva]."[33] After RMR expressed shock and disgust the appellant commented "you weren't the one doing it."[34] Significantly, the appellant did not claim or even imply RMR consented to the oral sex. Having listened to the recording of this exchange ourselves, we believe it likely that this evidence resonated with

---

[29] *Id.* at 512.

[30] *Id.* at 175-76.

[31] *Id.* at 516.

[32] Appellant's Brief at 18-19.

[33] PE 12.

[34] *Id.*

the members, particularly in light of the appellant's tone and self-absorbed focus on his thoughts, physical and sexual actions driven by his sexual desires, and the absence of any mention of RMR's consent or active participation in the sexual conduct. The effect of this evidence was undoubtedly amplified by the appellant's later remorse.

We likewise find the appellant's argument that the abusive sexual contact conviction raised a substantial possibility that he was also convicted of the three sexual assaults under this same incapacity theory to be contrary to the weight of the evidence.

Third, we are unpersuaded by the appellant's assertion that "when viewed together with the other enumerated theories of liability" within Article 120, UCMJ, "the bodily harm theory of liability is more simply understood as applying to situations where a lack of consent can be shown by words, conduct, or circumstances not amounting to incompetence."[35] He argues the bodily harm theory of criminal liability "could be construed to encompass all theories of sexual assault since all types of sexual assault involve a lack of consent, i.e., a 'bodily harm'" and argued his more narrowed interpretation "produces the greatest harmony and . . . the least inconsistency."[36] The appellant's premise is flawed. "Lack of consent" is not an element in all sexual assaults under Article 120(b), UCMJ.[37]

Fourth, "the manner in which the case was contested diminishes any argument that Appellant was not on notice as to what he had to defend against." *United States v. Oliver*, 76 M.J. 271, 275 (C.A.A.F. 2017). The appellant's trial strategy focused on RMR's pre-sexual encounter behavior, memory gaps and discrepancies attributable to alcohol intoxication, the

---

[35] Appellant's Brief at 22.

[36] *Id.*

[37] *See United States v. Riggins*, 75 M.J. 78, 84 (C.A.A.F. 2016) ("[l]ack of verbal or physical resistance or submission resulting from . . . placing another person in fear [necessary to prove violation of Article 120(b)(1)(A)] does not constitute consent. . . . the fact that the Government was required to prove a set of facts that resulted in [the victim's] *legal inability to consent* was not the equivalent of the Government bearing the affirmative responsibility to prove [the victim] *did not, in fact, consent*") (alteration in original) (citation, internal quotation marks, and footnote omitted). *See also Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9, ¶ 3-45-14 at 577, Note 9 (10 Sep 2014) ("Evidence of consent. Generally, the elements of an Article 120(b) offense require the accused to have committed sexual conduct "by" a certain method . . . . Accordingly, evidence that the alleged victim consented to the sexual conduct may be relevant to negate an element, even though lack of consent may not be a separate element.").

potential for her unintentional memory creation, and, alternatively, the appellant's alleged mistake of fact as to consent. Like the appellant in *Oliver*, the appellant cannot argue he was not on notice that the victim's competence was at issue in the case. *Id.* ("Whether abusive sexual contact or wrongful sexual contact, Appellant knew which part of the body he was alleged to have wrongfully touched [as] his theory throughout the court-martial was [consent]"); *see also Tunstall*, 72 M.J. at 197 (no prejudice where accused actually defended against both theories in the terminal element of Article 134, UCMJ).

The TDC was aware of the distinction among lack of consent, competence, and capacity. That he convinced the military judge to preclude the government from arguing capacity and competency with respect to the abusive sexual contact offense—an offense RMR could not even recall—further erodes his claim that he lacked notice. The TDC disclosed his awareness of these key distinctions in this colloquy while discussing instructions:

> MJ: So you knew the whole time that I was going to be reading the law and the definition of consent, that only a competent person could give consent.

> DC: We would agree, Your Honor. I don't know how that changes our detrimental reliance on the government's position at the beginning of the case though.[38]

The TDC was aware that the government was required to prove lack of consent beyond a reasonable doubt and that "all the surrounding circumstances [we]re to be considered in determining whether [RMR] gave consent[.]" Art. 120(g)(8)(C), UCMJ. He was also aware that RMR's alcohol consumption was a key surrounding circumstance and recognized that her competence was implicated by the relevant statutory definitions.

We are satisfied that the appellant received the requisite due-process notice of the elements he was required to defend against at trial. The specifications alleged nonconsensual sexual acts—insertion of his penis or fingers into RMR's vulva—and nonconsensual sexual contact—placing his mouth on RMR's vulva. The appellant received "fair notice" and knew both the offense and under what legal theory he was tried and convicted. *Tunstall*, 72 M.J. at 192.

---

[38] Record at 413.

**B. Instructions**

The appellant asserts three separate instructional errors by the military judge. First, the military judge erred by declining to provide a defense-requested instruction addressing RMR's capacity to consent and the relevance of her intoxication. Second, the military judge abused his discretion by instructing the members on RMR's competence and capacity to consent, after ruling that competence and capacity were not an issue, denying the appellant a fair trial. Third, the military judge improperly instructed the members on RMR's competence and capacity to consent. We disagree.

*1. Defense-requested instruction*

The appellant argues that the novel instruction his counsel requested at trial was correct and necessary, and the military judge erred by refusing to give it.

a. Law

"While counsel may request specific instructions . . . the [military] judge has substantial discretionary power in deciding on the instructions to give." *United States v. Carruthers*, 64 M.J. 340, 345 (C.A.A.F. 2007) (quoting *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (additional citations omitted)). "[A] military judge's denial of a requested instruction is reviewed for abuse of discretion." *Id.* at 345-46 (citations omitted). "'We apply a three-pronged test to determine whether the failure to give a requested instruction is error: (1) [the requested instruction] is correct; (2) it is not substantially covered in the main [instruction]; and (3) it is on such a vital point in the case that the failure to give it deprived [the accused] of a defense or seriously impaired its effective presentation.'" *Id.* at 346 (quoting *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003) (additional citation and internal quotation marks omitted) (alterations in original)). "All three prongs must be satisfied for there to be error." *United States v. Bailey*, 77 M.J. 11, 14 (C.A.A.F. 2017) (citation omitted).

b. Analysis

The TDC requested the military judge instruct the members that:

> [T]he question of [RMR's] capacity to consent is not before you. Put another way the government concedes that [RMR] had the capacity to consent despite her possible intoxication.
>
> Persons who have consumed an intoxicant, such as alcohol, often exercise free will and make conscious decisions for which they are legally responsible. This is true even if the person does not later recall making the decision or if they later regret the decision. . . .

> Evidence of intoxication in this case has been admitted merely on the question of whether the complainant consented, or the accused had a reasonable belief that she consented, and for its impact upon her memory. . . .[39]

The requested instruction is not a correct statement of law or fact and thus fails the first prong of the *Carruthers* test. Specifically, the language that "[RMR's] capacity to consent is not before you . . . [and] . . . the government concedes that [RMR] had the capacity to consent despite her possible intoxication" does not comport with the relevant statutory language or the facts of this case. Our conclusion is grounded in the definition of "bodily harm," which requires proof of lack of consent, and the definition of "consent," which "means a freely given agreement to the conduct at issue by a competent person." These two statutory definitions implicate the putative victim's "competence" in the sexual assault and abusive sexual contact specifications alleged here.[40] The appellant's assertion that the government conceded RMR's capacity to consent is also inaccurate. Before voir dire, the TC asserted his belief that capacity was relevant to the aggravated sexual contact offense, "due to [RMR's] lack of memory, there is the potential to argue that she did not have capacity and she was not competent for that sexual contact."[41] Indeed, the military judge cited the absence of governmental concession as a reason for not providing the defense-requested instruction—"given that the government is not conceding on the issue of competence within the definition of consent, I am not going to give your instruction."[42]

We conclude the remainder of the defense-requested instruction was substantially covered in the military judge's instructions, and that his declination to give any portion of the proposed instruction did not deprive or seriously impair any defense. *Carruthers*, 64 M.J. at 346. The appellant has therefore failed to satisfy any of the three prongs of the *Carruthers* test. *Bailey*, 77 M.J. at 14.

Accordingly, we conclude the military judge was well within his discretion when he declined to give the defense requested instruction.

---

[39] Appellate Exhibit (AE) XX.

[40] Charge sheet.

[41] Record at 37.

[42] *Id.* at 418.

### 2. *Competence and capacity-to-consent instructions*

The appellant argues the military judge abused his discretion by instructing the members on RMR's competence and capacity to consent, after ruling that competence and capacity were not at issue, and that the instructions provided by the military judge on capacity and consent were inaccurate and incomplete. We disagree.

#### a. Law

"Whether a panel was properly instructed is a question of law which we review *de novo*." *United States v. Mott*, 72 M.J. 319, 325 (C.A.A.F. 2013) (citations and internal quotation marks omitted). "The military judge has an independent duty to determine and deliver appropriate instructions." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citation omitted). In this regard, the military judge bears the primary responsibility for ensuring the members are properly instructed on the elements of the offenses raised by the evidence, "as well as potential defenses and other questions of law." *Id.* (citations and internal quotation marks omitted).

Where there is no objection to an instruction at trial, we review for plain error. *United States v. Robinson*, __ M.J. __, 2018 CAAF LEXIS 184 at *12-13, (C.A.A.F. Mar. 26, 2018). "[The appellant] bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *Id.* at *13 (citing *United States v. Davis*, 76 M.J. 224, 230 (C.A.A.F. 2017). "To establish plain error, 'all three prongs must be satisfied.'" *Id.* (quoting *United States v. Gomez*, 76 M.J. 76, 79 (C.A.A.F. 2017) (additional citation omitted). "The third prong is satisfied if the appellant shows 'a reasonable probability that, but for the error [claimed], the outcome of the proceeding would have been different.'" *Id.* (quoting *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017)).

#### b. Analysis

The appellant argues that he detrimentally relied on the government's concession and the military judge's ruling that competence and capacity were not at issue. He contends the military judge's decision to instruct the members on RMR's competence and capacity to consent violated his due-process right to a fair trial. He also asserts that the instructions provided by the military judge were inaccurate and incomplete because the instructions failed to identify the condition that could have rendered RMR incompetent to

consent and also failed to provide the scienter[43] necessary to discourage arbitrary or discriminatory enforcement. We disagree.

First, the military judge did not finally rule, nor did the government concede, that competence and capacity were not at issue.

The military judge's ruling was limited to precluding the government from arguing competence and capacity and not a final ruling that competence and capacity were not at issue in this case.[44] We understand the military judge's ruling in the context in which it was made—following the government's dismissal of the incapacity offenses and prior to trial on the merits and based on proffers by the parties, review of available documents, and abbreviated argument. The ruling cannot be fairly taken to be a legally dubious alteration of the remaining offenses, all of which implicated the "freely given agreement to the conduct at issue by a competent person." Art. 120(g)(8)(A), UCMJ. If, as the appellant implies without citation to authority, this preliminary order was not subject to modification by the military judge, it would be contrary to the "law of the case doctrine"[45] as well as the military judge's "primary responsibility for ensuring the members are properly instructed" on matters *raised by the evidence. Ober*, 66 M.J. at 405 (emphasis added) (citation and internal quotation marks omitted). The appellant's argument also ignores a military judge's explicit authority to change "a ruling made by that or another military judge in the case except a previously granted motion for a finding of not guilty, at any time during the trial." RULE FOR COURTS-MARTIAL (R.C.M.) 801(e)(1)(B), MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2012 ed.). To the extent the TDC thought that he had convinced the military judge to remove part of the statutory definition of *consent* from the trial, he cannot claim unfair surprise at the military judge's decision to ultimately adopt a correct view of the law—one that the TDC seemed to share—particularly when the TDC was responsible, in part, for introduction of evidence that placed RMR's competence in issue.[46]

Nor did the government concede that competence and capacity were not at issue. To the contrary, the TC argued capacity and consent were

---

[43] "The terms 'scienter' and 'mens rea' are often used interchangeably." *United States v. Haverty*, 76 M.J. 199, 204, n.7 (C.A.A.F. 2017).

[44] Record at 36-39.

[45] *United States v. Ruppel*, 49 M.J. 247, 253 (C.A.A.F. 1998) (In military jurisprudence the "law of the case [doctrine] only applies to final rulings and does not restrict a military judge's authority or discretion to reconsider and correct an earlier trial ruling.") (citation omitted).

[46] Record at 366-67, 381, 442; AE XIX.

potentially relevant to the abusive sexual contact specification since RMR had no independent recollection of the appellant performing oral sex on her. And the military judge acknowledged the government had not conceded this issue when he declined to provide the defense-requested instruction discussed above.

Second, the military judge's instructions on capacity and consent were accurate and consistent with the statutory definition of consent,[47] and the definition of key terms in *United States v. Pease*.[48]

After the military judge declined to give the defense-requested instruction that RMR's capacity to consent was not an issue for the members to decide, the TDC acknowledged that he wanted the military judge to provide the

---

[47] Record at 496-97 ("[T]he government also has the burden to prove beyond a reasonable doubt that [RMR] did not consent to the physical acts. 'Consent' means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent. . . . Lack of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent or whether a person did not resist or cease [sic] to resist only because of another person's actions. A sleeping, unconscious, or incompetent person cannot consent to a sexual act. The government has a burden to prove beyond a reasonable doubt that the consent to the physical acts did not exist. . . . Consent means a freely given agreement to the conduct at issue by a competent person. A competent person is simply a person who possesses the physical and mental ability to consent. An incompetent person is a person who lacks either the mental or physical ability to consent. To be able to freely give an agreement, a person must first possess the cognitive ability to appreciate the nature of the conduct in question, then possess the mental and physical ability to make and to communicate a decision regarding that conduct to the other person.

A person is incapable of consenting when she lacks the cognitive ability to appreciate the sexual conduct or the physical or mental ability to make and communicate a decision about whether she agrees to the conduct."). *See also* Art. 120(g)(8)(A)-(C).

[48] 75 M.J. 180, 185 (C.A.A.F. 2016) (approving definitions of three Article 120, UCMJ, terms including: (1) "competent person as a person who possesses the physical and mental ability to consent;" (2) "incompetent person as one who lacks either the mental or physical ability to consent due to a cause enumerated in the statute," and (3) "incapable of consenting as lack[ing] the cognitive ability to appreciate the sexual conduct in question or [lacking] the physical or mental ability to make and to communicate a decision about whether they agreed to the conduct") (citations and internal quotation marks omitted).

"*Pease* definitions."[49] Because the TDC did not object to the draft instructions provided for his review by the military judge, or to the instructions ultimately given to the members, we review for plain error.[50]

The statutory definition of consent is "a freely given agreement to the conduct at issue by a *competent* person."[51] Therefore, "[a] full definition of consent includes [the] definition of competence to consent." *United States v. Long*, 73 M.J. 541, 545 (A. Ct. Crim. App. 2014) (citations omitted).[52] As a result, we find no error with the military judge's decision to instruct the members regarding what constitutes a "competent person" for purposes of defining consent, nor do we find error in the instructions provided.

Significantly, the military judge's instructions neither transformed the charged specifications into Article 120(b)(3)(A), UCMJ, specifications nor alleviated the government's affirmative responsibility to prove beyond a reasonable doubt that RMR did not, in fact, consent. The military judge instructed the members that the government had the burden to prove beyond a reasonable doubt that RMR did not consent at least three times. "Absent evidence to the contrary, [we] may presume that members follow a military judge's instructions." *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted).

Third, the appellant failed to establish that the instructions provided by the military judge were inaccurate, incomplete or constituted plain error.

Even if we were to assume without deciding that any instruction should have identified the condition that rendered RMR incompetent to consent and should also have required that the appellant "knew or reasonably should have known" of that condition, and that the military judge erred in failing to so instruct, the appellant has not established plain error. Specifically, the appellant has not met his burden of showing "a reasonable probability that, but for the [errors claimed], the outcome of the proceeding would have been different." *Lopez*, 76 M.J. at 154 (citation and internal quotation marks omitted).

It is uncontroverted that prior to engaging in the charged sexual misconduct the appellant: knew RMR had consumed enough alcohol to render

---

[49] Record at 418-19.

[50] *Id.* at 491.

[51] Art. 120(g)(8)(A), UCMJ.

[52] In *Long*, the military judged instructed the members that "[c]onsent means words or overt acts indicating a freely given agreement to the sexual conduct by a competent person." 73 M.J. at 543.

her very drunk; knew she was sick and vomited more than once due to the alcohol she consumed; and knew she was so physically impaired by the alcohol she consumed that she had to be carried to his barrack's room. It is also uncontroverted that the appellant performed oral sex on RMR and that RMR had no independent recollection of that sexual contact. Therefore, if the military judge had instructed the panel members on the presumed appropriate listed condition and mens rea, the panel would have found that RMR was severely impaired by alcohol, and that the appellant knew of this impairment prior to engaging in the charged sexual conduct.

The appellant failed to demonstrate "a reasonable probability that, but for [the the military judge's failure to instruct on the specific condition that caused RMR's incompetence and the mens rea requirement], the outcome of the proceeding would have been different." *Id*. Because the appellant failed to establish the required prejudice, we conclude that the military judge did not plainly err in instructing the members.

We find no error, and certainly no plain error, in the military judge's instructions or in his decision to use the *Pease* instruction to further explain to the members what constitutes a competent person.

## C. Vagueness

The appellant argues, as applied in this case, the term *incompetent* was unconstitutionally vague because it neither provided him notice of the prohibited conduct nor defined a standard of guilt that avoids arbitrary enforcement.

The government avers that the TDC waived any objection to the definition of *incompetent* when he requested and received the *Pease* instruction. The government argues that even absent waiver the appellant is entitled to no relief as the CAAF has endorsed the definition in *Pease*, and the appellant identified no binding authority in support of the proposition that an ordinary person cannot understand that definition. We agree the appellant is entitled to no relief.

### 1. Law

"Due process requires fair notice that an act is forbidden and subject to criminal sanction." *Vaughan*, 58 M.J. at 31(citation and internal quotation marks omitted). "It also requires fair notice as to the standard applicable to the forbidden conduct." *Id*. (citing *Parker v. Levy*, 417 U.S. 733, 755 (1974)). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Parker*, 417 U.S. at 757 (citation and internal quotation marks omitted). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which

a defendant is charged." *Id.* (citation and internal quotation marks omitted). The CAAF has found such notice in the Manual for Courts-Martial, federal law, state law, military case law, military custom and usage, and military regulations. *Vaughan*, 58 M.J. at 31.

### 2. *Analysis*

The appellant avers that the term *incompetent* is unconstitutionally vague because it neither provided him notice of the prohibited conduct nor defined a standard of guilt that avoids arbitrary enforcement. He argues, even assuming the Government could prosecute bodily harm on a theory of incompetence due to intoxication, that Article 120(b)(1)(B) fails to delineate the applicable standard for whether a person is competent to consent.

Bodily harm in this case is a nonconsensual sexual act or contact, where consent means a freely given agreement to the conduct at issue by a competent person. At trial, the military judge instructed on the meaning of both an "incompetent person" and a "competent person" in accordance with *Pease*. Between the two instructions, the military judge provided the members a reasonably understandable standard for determining whether a person is competent to consent to sexual conduct.

We find the appellant's arguments that the term *incompetent* is void for vagueness unconvincing. The appellant was on reasonable notice that his conduct was subject to criminal sanction. This issue is without merit.

## D. Legal and factual sufficiency

The appellant avers the evidence is both legally and factually insufficient to prove any of the charged sexual offenses or, alternatively, that the evidence is factually insufficient to overcome his reasonable mistake of fact as to consent. Specifically, he alleges there is no evidence that RMR communicated, through words or conduct, a lack of consent prior to the sexual activity, nor are there words, conduct, or circumstances sufficient to show the appellant had reason to believe that RMR was not consenting to the sexual activity. We disagree.

We review for both legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)); *see also* Art. 66(c), UCMJ. When reviewing for legal sufficiency, we ask whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not

having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Id*. at 325.

The appellant was convicted of sexually assaulting RMR by penetrating her vulva with his penis twice, once in the shower and moments later on his bed, and penetrating her vulva with his finger on his bed. He was also convicted of abusive sexual contact for placing his mouth on her vulva. A conviction for each sexual offense required proof beyond a reasonable doubt of the alleged sexual act or contact and that the act or contact was without RMR's consent.

### 1. Evidence of the sexual acts and sexual contact

The evidence that the appellant committed the alleged sexual acts and sexual contact is overwhelming and undisputed.

RMR testified the appellant penetrated her vulva with his penis in the shower and then penetrated her vulva with his finger and penis on his bed. Her testimony was corroborated, in part, by the appellant and by forensic evidence. The appellant admitted penetrating RMR's vulva with his penis in the shower and on his bed, and performing oral sex on RMR during the NCIS-recorded phone conversation with RMR and apologized for having sex with RMR during that call and on other occasions. In addition, his DNA, including spermatozoa found on swabs taken from RMR's vagina, and his semen DNA, found in her underwear, corroborated penile penetration.

The appellant is the sole source of evidence that he placed his mouth on RMR's vulva. During the recorded phone conversation he informed RMR that he "did some pretty crazy things" like performing oral sex on her, commenting that it was his "first time."[53] We are convinced beyond a reasonable doubt that the appellant committed the charged sexual acts and sexual contact.

### 2. Evidence of bodily harm and lack of consent

We find beyond a reasonable doubt that each sexual act and contact constituted "bodily harm" and that RMR did not consent to the sexual conduct at issue.

First, RMR's testimony that she expressed her lack of consent through words and conduct is credible, notwithstanding her limited memory. Her testimony that she remembered being bent over in the shower with the appellant behind her, penetrating her vagina with his penis was consistent with his admission of engaging in intercourse in the shower. Her recollections

---

[53] PE 12.

of experiencing difficulty moving and speaking and having to concentrate to move her arm and speak were consistent with her level of intoxication. We find her testimony that she tried to nudge or elbow the appellant, then stood up, turned around, and said "No," compelling and consistent with the type of traumatic memories often recalled in such circumstances, according to expert testimony. Likewise, we find her testimony about being "laid down on [her] side," feeling the appellant's fingers and then his penis inside her vagina, and trying to get him to stop first using her arms and then saying 'No,'" consistent with her level of intoxication and and also consistent with the type of traumatic memories often recalled in such circumstances.[54]

Second, we find RMR's testimony that she did not consent to the sexual acts or contact credible and corroborated, in part, by the appellant's statements.

Notably, in three conversations with RMR after the charged misconduct, the appellant made no claim that she consented to the sexual conduct. Instead, he admitted engaging in the charged sexual acts, evaded or provided unconvincing answers to RMR's probing questions, and repeatedly apologized.

While driving RMR back to the Us' apartment the morning after the charged misconduct and after RMR acknowledged that she was "mad" at the appellant, he said, "he just wishes he made better decisions that night."[55] In a later text conversation, the appellant neither disputed RMR's claim that he knew she was not interested in sexual activity nor claimed that she consented. When RMR asked how he could justify undressing her and putting her in the shower without her consent, he unconvincingly replied, "I was drunk I liked you idk (sic) I thought you were thinking the same as me that's why I'm saying I'm sorry . . . Truth you were drunk so was I okay[.]"[56] During that conversation, the appellant said he was sorry at least five times and after additional prompting texted, "I'm sorry for having sex with you."[57]

Several weeks later, the appellant repeated this pattern in the NCIS-recorded phone conversation. He admitted to committing the sexual acts and again apologized to RMR with no claim that she consented. He also provided new insight into what he did and why. When RMR asked why he had sex with her in the shower when she was "super drunk" and smelled of vomit, he

---

[54] Record at 198-200.

[55] *Id.* at 203.

[56] PE 3 at 4-5.

[57] *Id.* at 6.

answered, "you were cleaning yourself – such a turn on – that's a turn on yeah."[58] In response to RMR's questions regarding what happened that night, the appellant admitted he did some "pretty crazy things like [performing oral sex on her]."[59] RMR had not recalled or reported the oral sex. The recording of this entire exchange is particularly significant evidence.

We find the absence of any assertions or plausible evidence of consent in these last two recorded conversations significant as they followed RMR's representations that she was blacked out due to alcohol intoxication and could not remember details of what happened. We also find the appellant's repeated apologies evidence a consciousness of guilt. *See United States v. Quichocho*, No. 201500297, 2016 CCA LEXIS 677, unpublished op. (N-M. Ct. Crim. App. 29 Nov 2016).

### 3. Mistake of fact as to consent

After careful review of the evidence, we are convinced beyond a reasonable doubt that the appellant did not honestly hold the mistaken belief that RMR consented, and even if he did, any such mistaken belief was not objectively reasonable. *See* R.C.M. 916(j)(1).

In conclusion, we find RMR's testimony to be credible, consistent even through the crucible of extensive cross-examination, and corroborated by other evidence. The appellant's admissions that he committed the two charged acts of penile penetration and oral sex, and his later remorse evidencing his consciousness of guilt weigh heavily in our determination.

Based on the record before us, and considering the evidence in the light most favorable to the government, a reasonable fact finder could have found all the essential elements of the charged offenses beyond a reasonable doubt. *Turner*, 25 M.J. at 324. After weighing all the evidence and recognizing that we did not see or hear the witnesses, we are also convinced that the appellant is guilty beyond a reasonable doubt. *Id.* at 325.

### E. Erroneous admission of evidence

The appellant avers the military judge abused his discretion by admitting evidence of RMR's consumption of alcohol.

"Where an appellant has not preserved an objection to evidence by making a timely objection, that error will be forfeited in the absence of plain error." *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007) (citing MILITARY RULE OF EVIDENCE 103(d), MCM, UNITED STATES (2016 ed.)). "A

---

[58] PE 12.

[59] *Id.*

timely and specific objection is required so that the court is notified of a possible error, and so has an opportunity to correct the error and obviate the need for appeal." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation and internal quotation marks omitted). The appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Id.* (citing *Brooks*, 64 M.J. at 328).

The appellant did not object to the evidence of RMR's consumption of alcohol. In fact, the TDC acknowledged the relevance of this evidence. The relevance of RMR's consumption of alcohol to each sexual offense alleged is readily manifest in this case. *See* Art. 120(g)(8)(B), UCMJ ("[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent"); S*ee also United States v. Clifton*, 35 M.J. 79, 81 (C.A.A.F. 1992).

There was no error, much less plain error, in admitting evidence of RMR's consumption of alcohol.

### III. Conclusion

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge HUTCHISON and Judge FULTON concur.

For the Court



R. H. TROIDL
Clerk of Court